MARY ELIZABETH PALMER and Others, Appellants, v. ABBIE S. MARSHALL and Others, Respondents.

*Statute of Uses and Trusts, § 55 — conversion of real estate into personalty by a will — power of sale to executors — no bar to an action of partition — waiver of a defect of parties in a complaint.*

In order to establish a valid trust under the first or second subdivision of section 55 of the Statute of Uses and Trusts, there must be an absolute and imperative direction to the executor to sell the real estate forming a portion of the trust created, and unless the will converts the realty into personalty, no valid trust under the first or second subdivision of the section is established.

Where it is evident from the face of a will that the testator intended not to require his executors to sell the real estate forming a part of a trust therein created, but to permit them to sell it, and to divide the proceeds or to divide the real estate among the devisees, there is no conversion of the realty into personalty.

The power to sell real estate granted to his executors by a testator is not an absolute legal bar to an action for the partition of such real estate, and it may be that under certain circumstances it is not an equitable reason for denying a judicial partition or sale thereof.

Where a defect of parties appears upon the face of a complaint, and no objection is taken thereto by demurrer or answer, the objection is waived, and cannot be insisted upon as a matter of right.

A defect of parties not pleaded is seldom a sufficient ground for dismissing an equity action.

APPEAL by the plaintiffs, Mary Elizabeth Palmer and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 26th day of February, 1894, upon the decision of the court rendered at the New York Special Term dismissing the plaintiffs' complaint upon the merits, and also from an order made at the New York Special Term and entered in said clerk's office on the 18th day of April, 1894, amending the said judgment and also from the said judgment as amended.

Rufus Story, a resident citizen of New Jersey, died October 6, 1877, at Bergen Point, in that State, leaving Ursula Story, his widow, and Mary E. Palmer, Alice Rowland, Abbie S. Marshall and Emily L. Paret, daughters, his heirs and next of kin. He left a large personal estate and real estate situate in the States of New Jersey and New York. He left a last will and testament, which

was duly probated in New Jersey as a will of realty and personalty, and letters were issued thereon to Mary E. Palmer, Alice Rowland and Dwight P. Cruikshank. On the 12th of October, 1887, the will was duly admitted to probate in this State and letters were issued thereon to said executors.

.The testator, by the first clause of his will, bequeathed to his widow his household goods, furniture, horses and carriages; by the second clause he devised to her a life estate in his homestead; by the third clause he directed that his executors invest $100,000 and pay the income thereof to his widow during her life; and by the fourth clause he gave to his grandson, Rufus S. Paret, $5,000, less a policy of life insurance of $2,200, on his reaching the age of twenty-one years.

The following are the fifth and sixth clauses of the will, over the construction of which this litigation arises:

"*Fifth.* I give, devise and bequeath all the rest, residue and remainder of my estate, real as well as personal, of every name and nature and wheresoever situate, of which I shall die seized, possessed or entitled (and including on the death of my wife my said homestead mentioned in the second clause of my will and the investment directed to be made for her benefit by the third clause of my will) to my executrices and executors, the survivors and survivor of them, or to such of them as may qualify, and the survivors and survivor of them, in trust and to and for the uses and purposes following, that is to say:

"1. That they sell, dispose of and convey the same at public or private sale, at such times and on such terms as they in their, his or her discretion, may think proper.

"2. That they divide such real and personal estate, or the proceeds thereof, into four equal parts or shares, one of such shares for each of my daughters, Mary Elizabeth Palmer, Emily L. Paret, Alice Rowland and Abby Story. * * *

"That my executors convey, pay and assign the shares of my daughters Mary Elizabeth Palmer, Alice Rowland and Abby Story to them absolutely, and hold, retain, invest and keep invested the share of my daughter Emily L. Paret, and collect and receive, and pay or apply, the rents, interest and income arising therefrom to the use of my said daughter during her life.

" Should any of my daughters die in my lifetime, or on the death of my daughter Emily L. Paret, I give, devise and bequeath the share the one so dying would have been entitled to, to her issue absolutely, and if none, then to my surviving daughters and to the issue of such of my daughters who may have died, such issue to take by representation.

· "*Sixth.* I authorize and empower my executors to pay all the taxes and assessments which may be imposed upon my property (including, during the life of my wife, my said homestead) until the division or sale thereof; also to pay all premiums of insurance and sums necessary to keep the buildings (including those on my homestead during the life of my wife) in good repair, to lease or rent any of my real estate until such sale or division, and to make all divisions and partitions of any real and personal estate, or the proceeds thereof; also to make, seal, execute and deliver all necessary deeds or other instruments in writing, with or without seal, necessary in the premises."

By the second codicil to the testator's will he provided :

" It is my will that the remainder of said share of my daughter Emily shall be held and invested and kept invested during her life by my executors and trustees, who shall collect and pay or apply the interest and income thereof to the use of my daughter Emily so· long as she shall live, and if she be not living, or on her death, that my executors and trustees convey, pay and assign such residue of such share to her issue absolutely."

The widow accepted the provisions of the will in lieu of dower, and before this action was begun she died. The four daughters are living. Mrs. Paret has nine children and three grandchildren. Mrs. Palmer has five children and five grandchildren. Mrs. Rowland has five children and no grandchildren. Mrs. Marshall has one child and no grandchildren. This action was begun May 8, 1891, to partition the real estate situate in this state left by the testator. The four daughters and their husbands and their descendants, and the husbands and wives of such as are married, are parties to this action.

Emily L. Paret and six of her children, who are adults, answer and contest the right of the plaintiffs to the partition. None of the

other adult defendants answer, but the defendants who are minors answer by their guardians *ad litem* and submit their rights to the court.

*John E. Parsons,* for the appellants.

*Louis V. Booraem, Black & King, William B. Bristol* and *Herman W. Schmitz,* for the respondents.

FOLLETT, J. :

The learned counsel for the appellants insists that the legal title vested in the three daughters other than Mrs. Paret and in the plaintiffs, as trustees, for her, that they are tenants in common, and that an action to partition may be maintained. The learned counsel for the respondents insist that a valid trust was created, that there was a conversion of the realty into personalty out and out, and that the legal title to the entire estate is in the executors, as trustees, under the will.

It is apparent that testator intended to empower the executors in their discretion to convert his residuary estate, real and personal, into money, and pay one-fourth thereof to each of his daughters Mary E. Palmer, Alice Rowland and Abby Story (now Marshall), and as trustees to hold the other fourth in trust during the life of Emily L. Paret, collect the income thereof and apply it to her use during her life, and after her death to pay it to her issue. However, the executors are not commanded to convert the estate into money, but are authorized to divide it into four equal shares and " convey, pay and assign the shares of my daughters Mary Elizabeth Palmer, Alice Rowland and Abby Story to them absolutely, and hold, retain, invest and keep invested the share of my daughter Emily L. Paret, and collect and receive and pay or apply the rents, interest and income arising therefrom to the use of my said daughter during her life."

In the sixth clause the executors are empowered " to make all divisions and partitions of any real and personal estate, or the proceeds thereof," and " to lease or rent any of my real estate until such sale or division thereof, and to pay all taxes and premiums on policies of insurance until the property shall be divided or sold."

The executors are not directed to apply to any purpose all of the

rents and income arising from the undivided estate, nor are they directed to apply one-fourth of the rents and income arising from the undivided estate to the use of Mrs. Paret, but the direction in respect to the application of " rents, interest and income," relates solely to that which shall arise after the division of the estate from her share held in trust. The language is, " and hold, retain, invest and keep invested the share of my daughter Emily L. Paret, and collect and receive and pay or apply the rents, interest and income arising therefrom to the use of my said daughter during her life." It may be that the income of one-fourth being given for the support of Mrs. Paret, that the executors could be compelled to apply some portion of the income of the undivided estate, not exceeding one-fourth, to her use in advance of a division and of the establishment of the trust estate. Under the statutes of this State (1 R. S. 728, 729), the interests and the estates of the devisees under this will seem to be plain.

" § 55. Express trusts may be created for any or either of the following purposes :

" 1. To sell lands for the benefit of creditors.

" 2. To sell, mortgage or lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon.

" 3. To receive the rents and profits of lands, and apply them to the use of any person during the life of such person, or for any shorter term, subject to the rules prescribed in the first article of this title.

" 4. To receive the rents and profits of lands, and to accumulate the same, for the purposes and within the limits prescribed in the first Article of this Title.

" § 56. A devise of lands to executors or other trustees, to be sold or mortgaged, where the trustees are not also empowered to receive the rents and profits, shall vest no estate in the trustees ; but the trust shall be valid as a power, and the lands shall descend to the heirs or pass to the devisees of the testator, subject to the execution of the power."

" § 58. Where an express trust shall be created for any purpose not enumerated in the preceding sections, no estate shall vest in the trustees ; but the trust, if directing or authorizing the performance of any act which may be lawfully performed under a power, shall

be valid as a power in trust, subject to the provisions in relation to such powers contained in the third article of this title.

" § 59. In every case where the trust shall be valid as a power, the lands to which the trust relates shall remain in or descend to the persons otherwise entitled, subject to the execution of the trust as a power."

An express trust is not created to sell or lease lands for the benefit of legatees because there is no positive direction that the executors shall sell the lands, nor is there any direction that the lands be leased for the benefit of legatees. There is no trust under the third subdivision of section 55, because there is no direction to apply the rents and profits to the use of any person during the life of such person. In *Cooke* v. *Platt* (98 N. Y. 35) the testator gave all of his estate to his executors absolutely, with "full power" to receive the rents, issues and profits, and to sell, mortgage and convey, in their discretion, upon trust, to divide it or its proceeds, after the payment of his debts, among his four children in equal proportions. It was held in that case : " The main purpose of the testator was to give his estate remaining after payment of his debts equally to his four children. He imposed upon his executors the duty of making the division, and this was the declared purpose of the trust. If there was nothing further in the will there could be no question. The statute does not authorize the creation of a trust for the partition of lands. But a power may be created for this purpose and the devise to the executors, though void as a trust, may be valid as a power to divide and distribute." It was held that in order to establish a valid trust under the first or second subdivision of section 55 that there must be an absolute and imperative direction to the executor to sell the land. In other words, it was held that unless the will converts the realty into personalty out and out no valid trust under the first or second subdivision of the section is established.

On the face of the will it is plain that the testator intended not to require his executors to sell the real estate but to permit them to sell it and divide the proceeds, or to divide the real estate among the devisees. Under such circumstances there is not a conversion of the realty into personalty. (*Cooke* v. *Platt*, 98 N. Y. 36 ; *Scholle* v. *Scholle*, 113 id. 261 ; *Clift* v. *Moses*, 44 Hun. 312 ; S. C., 116 N. Y. 144.) The Court of Chancery of New Jersey has decided that

this will does not convert the realty into personalty.    (*Story* v. *Palmer*, 46 N. J. Eq. 1.)

In *Morse* v. *Morse* (85 N. Y. 53) the will related to a farm of 150 acres which was incapable of being divided into six parcels of twenty-five acres each without substantially destroying the value of the property, and it was held under the circumstances that the testator must have intended that his land should be converted into money.    There was not in that will, as in this, power given to the executors to divide the realty as such among the beneficiaries.

Whether a power to sell realty is an absolute legal bar to an action to partition has been considered and determined by this court in the negative. (*Mellen* v. *Bunning*, 72 Hun, 176), and we see no occasion for rediscussing the question.    All of the beneficiaries except Mrs. Paret desire that the land be partitioned or sold as may be for the best interest of the devisees.    Two of them are plaintiffs and one is a defendant making no defense.    The executors also desire that the land be partitioned or sold under the direction of the court.    It is apparent that the sisters are not agreed as to the management or distribution of the estate, and it may not be unwise for these executors to ask that the property be sold or divided under the direction of the court rather than to assume to divide or sell it on their own judgment.

It would seem that Mrs. Paret's interests would be best served by a partition of the realty, or a sale and division of the avails, to the end that the trust for her benefit may be established, her income made reasonably certain and it be known what amount is to go to her issue on her death.

We think, under the facts proven, that the power of sale is not an equitable reason for denying a judicial partition or sale of the land.

It is urged that the executors, as such, are necessary parties to this action.    That defect, if it be one, appears upon the face of the complaint, and, not having been taken by demurrer or answer, is waived, and cannot be insisted upon as matter of right.    (Code Civ. Proc. § 499.)    A defect of parties not pleaded is seldom a sufficient ground for dismissing an equity action (*Pondir* v. *N. Y., L. E. & W. R. R. Co.*, 72 Hun, 384), and in this case the question can be easily obviated by an amendment.

## 22  PEOPLE ex rel. EQUITABLE GAS CO. v. BARKER.

First Department, October Term, 1894.　　　　[Vol. 81.

The judgment should be reversed and a new trial granted, with costs to the appellants to abide the event.

Parker, J., concurred; Van Brunt, P. J., concurred in result.

Judgment reversed, new trial granted, with costs to appellants to abide event.