L. FRANCIS RAY, Appellant, *v.* ELSIE B. FOWLER and Others, Defendants, Impleaded with PERCY N. POWERS and Others, Respondents.

First Department, March 3, 1922.

Wills — construction — will providing for life estate and trust with power of sale of real property in trustees with remainder over held to vest legal title in remaindermen subject to power of sale — action maintainable against remaindermen for debt of decedent — equity — doctrine of equitable conversion not applicable to relieve remaindermen from liability.

Under the will of a testator which devised one parcel of the realty to his wife for life or until she should remarry, and devised the remainder of the realty to trustees to collect the income and pay it over to the wife during her life or until her remarriage, and provided that, upon the termination of the life estate and trust for the wife, said realty, together with the personalty, should pass to the testator's children, and gave the trustees power to sell said realty during the life of the wife and, " until such sale," to collect and pay over the income, and, without express provision for the trustees to receive rents and profits after the wife's death, directed that, if the trustees deemed it unwise to sell the realty immediately upon the termination of the trust for the wife, they should use their discretion as to the time of sale, but that the sale should not be postponed longer than ten years after the termination of the trust, the surviving trustee had no title to the realty after the death of the wife, but, subject to the power of sale, the legal title was vested in the remaindermen, the devisees under the will.

Hence, an action brought pursuant to section 101 of the Decedent Estate Law and sections 1844–1860 of the Code of Civil Procedure (now Decedent Estate Law, §§ 176–193) to fix liability on said devisees for an alleged debt of the testator is maintainable.

The contention of the devisees that it was the intent of the testator to convert his realty into personalty and that they have no interest in the realty as such cannot prevail, as the same persons take the property, whether it be considered realty or personalty; and equitable conversion is a mere fiction of equity resorted to only when necessary to determine ownership and to obtain equitable results. Moreover, under section 97 of the Real Property Law, the interest of the devisees is to be considered realty and passes as such, even though the power of sale be exercised.

APPEALS by the plaintiff, L. Francis Ray, from orders of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 27th day of September, 1921, sustaining several demurrers to the complaint, and from judgments of the Supreme Court in favor of the defendants Harry L. Powers, individually and as surviving executor and trustee of Jesse W. Powers, deceased, and Elizabeth H. Powers, entered in the office of the clerk of the county of New York on the 10th day of October, 1921, dismissing the complaint, and also from an order entered in said clerk's office on the 27th day of September, 1921, denying plaintiff's motion for the extension of an existing receivership.

*Phillips & Avery* [*Earl A. Darr* of counsel], for the appellant.

*Ingraham, Sheehan & Moran* [*Louis B. Grant* of counsel], for the respondents Harry L. Powers and others.

*Bobbe & Brown* [*Sidney S. Bobbe* of counsel], for the respondents Percy N. Powers and others.

*Holmes, Rogers & Carpenter* [*Charles P. Rogers* of counsel; *Oliver C. Carpenter* with him on the brief], for the defendants Elsie B. Fowler and others.

MERRELL, J.:

This action is brought, pursuant to section 101 of the Decedent Estate Law (as amd. by Laws of 1919, chap. 91) and sections 1844–1860 of the Code of Civil Procedure,* to obtain an adjudication that devisees under the will of Jesse W. Powers, deceased, are liable for an alleged debt of the testator now owned by the plaintiff, as assignee, to the extent of the interest of such devisees in three parcels of real property, situated in New York city. The debt sued upon arose by simple contract, and, if the title to the real property in question is vested in such devisees under decedent's will, this action can be maintained.

The defendants, claiming that the title to such real property is not vested in them, interposed six separate demurrers, which were sustained by the learned justice at Special Term. Three of the defendants entered judgments, and from the orders sustaining said demurrers and the judgments entered thereon six of these appeals are taken. The plaintiff also appeals from an order denying plaintiff's motion to extend to this suit a receivership in a partition action now pending and which affects the same real property, the title to which is here involved. The order appointing such receiver was affirmed by this court (*Fowler* v. *Powers,* 189 App. Div. 888), and the appellant claims that such decision is decisive of the question to be determined on this appeal.

The respondents contend that it was the intention of the testator, by the terms of his last will and testament, to convert his real property into personalty, and that they have no interest in decedent's real property, as such, and for that reason this action cannot be maintained.

The testator's will, so far as material, is as follows:

" *Third.* I hereby devise and bequeath unto my wife, Mary E. Powers, the house and real estate known as No. 34 Mount Morris Park West in said Borough and City above mentioned, and also

---

* Now Decedent Estate Law, §§ 176–193, as added by Laws of 1920, chap. 919. See, also, Laws of 1920, chap. 919, §§ 3, 4, repealing former statutes on April 15, 1921.— [REP.

all my household furniture and utensils of every kind, nature and description including, but not limiting to silver and plated ware; pictures, clothing, horses, carriages, harnesses, stable fixings and jewelry except the gold watch presented by my son, Harry L. Powers, which I give to my grandson, Jesse W. Powers, when he attains the age of eighteen years and I direct that his name shall be appropriately engraved thereon and as coming from his grandfather, To Have and To Hold said real and personal estate unto my said wife, Mary E. Powers, for and during the period of her natural life, or until she shall remarry. It is my earnest desire, though not a condition, that my said wife shall, after my death, continue to maintain the family home as now maintained and that she will allow my daughter, Mary I. Ball, and such other of my children as she may choose to reside there with her, to the end that said children may add comfort, happiness and assistance to her in her declining years. In case she should decide to make her residence elsewhere or to abandon the present home, she shall have the right to do so and to rent said property and to receive the same to her own use during her natural life or until said property shall be sold as hereinafter provided. In case said property shall be sold, the net proceeds of said sale shall be held by my executrices and executor in trust to invest and keep invested the same and to pay over the entire net income arising therefrom unto my said wife for and during her natural life. In the event of her remarriage, said property (or the proceeds thereof, if the same shall have been sold), shall immediately become and form a part of my residuary estate.

" *Fourth.* All the rest, residue and remainder of my estate, real, personal or mixed, of whatever kind and nature and wheresoever situated I give, devise and bequeath unto my executrices and executor and as trustee to have and to hold the same unto them and their successors In Trust, however, for the following uses and purposes, that is to say:

" To collect and receive all the rents, issues, income and profits arising therefrom and after making all necessary charges against the same and against my estate, to pay the net income arising therefrom to my said wife, Mary E. Powers, during her natural life or until her remarriage, at such times and in such installments as she may desire.

" *Fifth.* Upon the termination of the aforesaid life estate and trust created for the benefit of my said wife, I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal or mixed and wheresoever situate, in equal shares and portions, to my five sons and daughter, that is to say, to my sons

Francis B. Powers, Jesse W. Powers, Jr., Percy N. Powers, Charles H. Powers, Harry L. Powers and daughter, Mary I. Ball.

" If any or either of my children to whom any of the foregoing legacies are left shall die before me or before the termination of the trust created in favor of my wife, as set forth in the fourth paragraph, leaving issue, then it is my will that such issue, if of full age, shall receive in equal shares by representation the portion their parent would have received if living, but if any of such issue shall then be minors, I direct that the shares of each of the said minors be held by my trustees or their successor or successors In Trust, for each of such minors upon a separate and distinct trust to invest and keep the same invested and to apply the net income therefrom towards the support, maintenance and education of said minors until each shall attain the age of twenty-one years or until his or her prior death, and on reaching such age to pay the principal of such shares to the beneficiaries entitled thereto. In case of his or her prior death then to divide the said trust funds among his or her then surviving brothers or sisters in equal shares.

" If, however, any or either of my said children who may so die before me or before the termination of the trust created for the benefit of my said wife shall die without issue him or them surviving, then and in that case the share which would have gone to such of my said sons, if living, shall be divided equally among my other living sons and my daughter in equal proportions.

" *Sixth.* For the purpose of enabling my said executrices and executor and trustees or their successor to carry out and execute the provisions of this will, I do hereby give unto them full power and authority to bargain and sell, either at public or private sale, any and all of my said real and personal estate, including the property specified in paragraph designated ' Third ' of this will during my wife's life, if she shall consent to such sale, with full power and authority to grant, alien, bargain, sell, convey any and all of my said real estate to any person or persons in fee simple by such ways and means as to them may seem fit or necessary, either wholly for cash or partly for cash, the balance to be secured by bond and mortgage, and in the meantime and until such sale I give and grant unto my executrices and trustees or the survivor or successor thereof, full power and authority to rent and lease said real estate and to make investments and to effect loans and execute bonds secured by mortgages on said real estate, if necessary, and also to collect the rents, issues and profits of said real estate and to apply the same as hereinbefore directed and to make alterations and repairs thereto, all surplus money to be deposited in bank or trust companies at interest, subject to the joint check of the said

executrices and trustees and I further authorize my said executrices and trustees or their survivor or successor to adjust and compromise all debts, claims and controversies in which my estate shall be in any manner interested according to their best judgment and to execute all necessary papers under seal or otherwise in connection therewith.

" I further direct that if in the sound discretion of my surviving trustees or successors they shall deem it detrimental to the best interests of my estate to make a sale of my real estate or any part thereof immediately upon the termination of the trust created for the benefit of my said wife then and in that event, I will and ordain that they shall exercise their discretion as to the appropriate time of such sale, but such sale shall not be postponed longer than ten years after the temination of said trust in favor of my said wife."

At the time of his death the testator was seized of three parcels of real property in the city of New York. One parcel, known as the homestead, testator, by the 3d clause of his said will, devised to his widow during her life or until she should remarry. The other two parcels passed under the residuary clause. By a codicil to his will the decedent appointed his wife, Mary E. Powers, and his daughter, Mary I. Ball, and his son, Harry L. Powers, as executrices and executor, and also as trustees, of his will. Mary E. Powers outlived the testator and died in 1918, prior to the commencement of this action, having never remarried. Mary I. Ball also died prior to the commencement of this action. Harry L. Powers, therefore, is the sole surviving executor of and trustee under said will.

The appellant's theory of the case is that the trustees under decedent's will never took any title to any of the real property above mentioned, except that, as such trustees, they took title to the Fifth avenue and the One Hundred and Twenty-fourth street property during the lifetime of decedent's widow, and that, since the death of decedent's widow, the trustees have had no interest in such real property, except for the purposes of sale. If the appellant is correct, the title to the real property is now vested in the respondents. It is conceded that the action will not lie under section 101 of the Decedent Estate Law (as amd. by Laws of 1919, chap. 91), unless the title is vested in the aforesaid devisees. This section reads as follows: " The heirs of an intestate, and the heirs and devisees of a testator, are respectively liable for the funeral expenses and debts of the decedent, arising by simple contract, or by specialty, to the extent of the estate, interest, and right in the real property, which descended to them from, or was effectually devised to them by, the decedent."

The appellant claims that even if the court should hold that decedent's will contains an imperative direction to sell his real property and convert the same into money, there is no express trust to receive the rents and profits therefrom, and that for such reason the fee in the real property is not vested in the trustee, and cites in support of his contention sections 96 and 97 of the Real Property Law. These sections read as follows:

" § 96. Purposes for which express trusts may be created. An express trust may be created for one or more of the following purposes:

" 1. To sell real property for the benefit of creditors;

" 2. To sell, mortgage or lease real property for the benefit of annuitants or other legatees, or for the purpose of satisfying any charge thereon;

" 3. To receive the rents and profits of real property, and apply them to the use of any person, during the life of that person, or for any shorter term, subject to the provisions of law relating thereto;

" 4. To receive the rents and profits of real property, and to accumulate the same for the purposes, and within the limits, prescribed by law.

" § 97. Certain devises to be deemed powers. A devise of real property to an executor or other trustee, for the purpose of sale or mortgage, where the trustee is not also empowered to receive the rents and profits, shall not vest any estate in him; but the trust shall be valid as a power, and the real property shall descend to the heirs, or pass to the devisees of the testator, subject to the execution of the power."

While the decedent's will is somewhat ambiguous and his intention not entirely clear, it is apparent that, upon the death of his wife, the testator clearly intended that his real property should be sold within a period of ten years. Such intention is clearly expressed in the last part of paragraph 6 of his will, in which he expressly directs his surviving trustees or successors to sell such real property within ten years from the termination of the trust in favor of his wife. In the 5th and 6th paragraphs of his will the testator disclosed his intention that his real property be divided and distributed among his beneficiaries. In the 5th paragraph of testator's will there is an absolute devise to the testator's sons and daughter. The intention of the testator that such sons and daughter should be vested with the title to his real property upon the death of his widow is in nowise inconsistent with a grant of a power to his trustees to sell such real property for the purpose of distribution. Section 97 of the Real Property Law is intended to include devises

of the nature contained in decedent's will. This section provides that a devise of real property to a trustee for the purpose of sale does not vest any estate therein in such trustee in any case where the trustee is not also empowered to receive the rents and profits. While the testator's will empowers his trustees to receive the rents and profits of his real property during the lifetime of his widow, it contains no such power after her death. I am of the opinion that the title to decedent's said real property passed to his devisees, subject to the execution of the power of sale given to his trustee. (*Matter of Tienken*, 131 N. Y. 391.) In the *Tienken* case the will provided for a life estate in decedent's wife and contained a power of sale in which the decedent empowered and directed his surviving executors to sell all of his real estate remaining unsold, at public or private sale, in fee absolute, and to divide the proceeds equally between his children, share and share alike. The court held, Judge FINCH writing and all the judges concurring, that the title to testator's real property did not vest in the trustee. In his opinion Judge FINCH said (at p. 404): "It is certain that there was no equitable conversion out and out and operating from the death of the testator, and none can be implied at an earlier date than the death of the widow, for none was directed prior to that event. The land, therefore, remained real estate at the death of the testator, unconverted in fact or in equity, so that the remainder in fee descended or passed by the will, and must be accounted for. We have already seen that it did not go to the executors whose legal estate was solely for the life of the widow, and was not at all enlarged by powers of sale which themselves conferred no title; and it seems imperative to say that the remainder passed by descent or devise to the four children who survived the testator, and were identical as heirs or devisees. * * *" (At p. 408): "The clause of sale and distribution must, therefore, be regarded as a direction and authority given for the convenience of division, and solely for that purpose. Having no other, it may become unnecessary and the devisees hold and retain the land in its real and actual character. The fiction of an equitable conversion is adopted only where it is a needed element to determine ownership. Equity will not resort to the fiction where the same right devolves upon the same persons whether the property be treated as money or land, and where no rights of third persons depend upon the conversion."

The appellant also relies upon *Cooke* v. *Platt* (98 N. Y. 35) and *Van Cott* v. *Van Cott* (167 App. Div. 694; affd., 219 N. Y. 673). In the *Cooke* case the Court of Appeals, referring to statutes (1

R. S. 728, § 55, as amd. by Laws of 1830, chap. 320, § 10; 1 R. S. 729, §§ 58, 59) corresponding in effect to the aforesaid sections of the Real Property Law, said (at p. 38): " * * * We are of opinion that it is essential to the constitution of a valid trust for either of these purposes [a sale for creditors or legatees], that the power of sale conferred upon the trustees must be absolute and imperative, without discretion, except as to the time and manner of performing the duty imposed, and that it is not sufficient to invest the trustee with a merely discretionary power of sale, which he may or may not exercise at his option, and which does not operate as a conversion. * * * Nor can the trust be sustained as a trust to receive the rents and profits of land, under the third subdivision of section 55. There is no direction to apply them to the use of any person or for any period. When received they are distributable, not as rents and profits, but because incorporated into the mass of the estate, to be divided by the executors. (See *Heermans v. Burt,* 78 N. Y. 259.) "

In *Van Cott* v. *Van Cott (supra)* the same question was considered, and Mr. Justice DOWLING, writing for this court, said (at p. 699): " The second question raised is whether title to the real estate in question is in the trustee or whether such title terminated at the death of the life tenant, and all that remained in the trustee was a power of sale * * *. We deem the second contention the correct one. During the lifetime of the life tenant the legal title to the fee was in the trustee, which was authorized under the will during that period to collect and receive the rents and income thereof. After the death of the life tenant no further power was granted to the trustee to collect the rents, but it was simply given a power to sell. All that the trustee then had, therefore, was a power, and the real estate passed to the devisees of the testator subject to the execution of the power. (Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], §§ 96, 97.)"

As above shown, the will in the case at bar does not contain any express provision to receive rents and profits after the death of decedent's widow. For that reason the legal title to the real property in question is not vested in the surviving trustee, but, subject to the power of sale, the legal title is in the devisees, as claimed by the appellant. On the appeal to this court in *Fowler* v. *Powers (supra)* the same question here involved was decided in favor of the respondent, who there contended that the complaint in the partition action was insufficient, for the reason that it appeared upon the face thereof that the parties were not tenants in common. In determining whether or not the receiver was properly appointed, it was necessary to determine the question

as to the vesting of the title under the will of Jesse W. Powers, deceased. It was then determined by this court that there was no equitable conversion of testator's real property into personalty, and that the title vested in the aforesaid devisees of the testator under his will; that the complaint stated a good cause of action; and that the plaintiff was a tenant in common with the defendants; and that a receiver *pendente lite* was properly appointed. No appeal appears to have been taken from the affirmance by this court of the order appointing such receiver, and, while the plaintiff is not a party to the partition action, and is not bound by such decision of this court, still the question now before the court was thus passed upon and decided.

In the case at bar the same persons will take the property bequeathed or devised by the testator, whether it be deemed personal or real. As above shown, equitable conversion is a mere fiction of equity resorted to only when it is necessary to determine ownership. When the doctrine is applied the court regards the substance and not the mere form of the instrument creating the title, and considers that as done which ought, in the interest of justice and equity, to be done. Being altogether a doctrine of equity, its application should be resorted to only to obtain equitable results. When the testator gave to his trustees a power to sell his real property, he did not thereby intend to vest in the trustees the title thereto. Until the power is exercised, the devisees have a clear right to enjoy and use the land, and to receive the rents and profits and apply the same to their own use, free from interference by the trustee. The right to ask the trustee to exercise the power of sale belongs alone to these same devisees, and, if exercised, it will be solely for their benefit. As both the legal title and the privilege to require the trustee to convey are in the same persons, there is no reason for equity to step in and say that the real property is to be deemed personalty, and thus deprive the plaintiff of his cause of action.

Moreover, it is clear that, under section 97 of the Real Property Law, the interest of the devisees is to be considered real property and passes as such, even though the power of sale be exercised. While this rule may be somewhat different in States having no statute similar to section 97 of our Real Property Law, it is plain that, under the decisions of the courts of this State, the respondents took a vested interest in the testator's real property under his will, and the doctrine of equitable conversion cannot be applied. (*Cooke* v. *Platt*, 98 N. Y. 35; *Scholle* v. *Scholle*, 113 id. 261, 270; *Coann* v. *Culver*, 188 id. 9, 15; *Steinhardt* v. *Cunningham*, 130 id. 292, 299; *Matter of Tienken*, 131 id. 391, 402; *Holly* v. *Hirsch*,

135 id. 590, 594; *Woerz* v. *Rademacher*, 120 id. 62; *Chamberlain* v. *Taylor*, 105 id. 185; *Palmer* v. *Marshall*, 81 Hun, 15.)

The orders and judgments appealed from should be reversed, with one bill of costs and the disbursements of said appeals to the appellant, and the demurrers interposed by the defendants overruled, and the motions of the defendants for judgments on the pleadings should be denied, with ten dollars costs, with leave to the defendants, respondents, to answer upon the usual terms, and an order extending the receivership in the partition action to this suit should be granted, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concur.

Orders and judgments reversed, with one bill of costs and disbursements of said appeals to the appellant, demurrers overruled and motions for judgment on pleadings denied, with ten dollars costs, with leave to defendants, respondents, to answer on the usual terms, and an order extending the receivership granted, with ten dollars costs. Settle orders on notice.