JOHN HEERMANS, Appellant, v. SAMUEL W. BURT, Respondent.

F. executed an instrument in writing under seal, which, by its terms, purported to convey to plaintiff, as trustee, certain real and personal estate, with power to sell the lands granted by retail, and to convey with covenants of warranty, binding on the grantor's heirs; and, until sold, to rent such as could be rented, to collect all debts owing to the grantor, and to execute deeds for all lands then under contract of sale, "on payment of the debts owing on them respectively," and to dispose of the avails of such estate as follows: First. To defray the expense of the trust. Second. To pay over to the grantee during his life the residue of all moneys received, or to appropriate them to his use, under his direction. Third. After his death, and after the payment of his just and legal debts and the expenses of the trust, to distribute the residue as directed in a supplementary writing to be thereafter executed; if no such writing should be executed, then to distribute said residue among the heirs of the grantor. In an action of ejectment, brought, so far as appears, during the life-time of F., to recover possession of a portion of the lands specified in the instrument, *held*, that the instrument did not create any express trust authorized by the statute (1 R. S., 728, § 55), and consequently did not vest the legal title to the land in plaintiff; that it did not create a trust to sell for the benefit of creditors, as that was not the purpose of the instrument, and as it simply recognized the legal right of the creditors to payment before any distribution, in no manner adding to their rights or security, also as no trust to sell for the payment of debts could arise until the death of F.; that the conveyance could not be sustained as creating a trust to receive the rents and profits of the lands and apply them to the use of the grantee during life, as the main object was to sell and pay over the proceeds to the grantee during his life, and to his appointees after his decease, the direction to rent being merely incidental to this purpose.

As to whether the instrument created merely an agency for the management of the estate for the benefit of F., or a valid irrevocable power in trust, *quære*.

(Argued May 30, 1879; decided September 30, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, in favor of defendant, entered upon an order denying motion for a new trial and directing judgment on a verdict.

This was an action of ejectment to recover possession of certain premises in Steuben county.

Plaintiff claimed title under the following instrument :

"Whereas, I, Joseph Fellows, of Corning, in the county of Steuben and State of New York, from infirmities of advanced age, deem it expedient to convey to my nephew, John Heermans, of Corning aforesaid, my real and personal estate in the States of New York, Pennsylvania, Michigan, Wisconsin, Indiana, Ohio, Illinois and West Virginia, as trustee for the purposes herein stated : Now, therefore, I the said Joseph Fellows, in consideration of the premises, and also of one dollar to me paid by the said John Heermans the receipt whereof is hereby acknowledged, have sold and by these presents do grant, release and convey unto the said John Heermans, his heirs and assigns forever, all my real and personal estate, situate in the several States aforesaid, to have and to hold the same unto the said John Heermans, his heirs and assigns forever ; provided always, that the said John Heermans shall sell the said granted lands by retail, for the best prices that can be got for the same, and convey them in fee simple to purchasers, with covenants of warranty, binding my heirs to warrant and defend the title to the lands so to be sold and conveyed, and until the said lands shall be sold as aforesaid, he shall rent such of them as can be rented for the best prices that can be got. He shall collect all debts owing to me, and execute deeds as aforesaid, for all lands now under contract of sale, on payment of the debts owing on them respectively. The avails of the said real and personal estates shall be paid, distributed and disposed of as follows : First. To defray the expenses of this trust, to wit : Five per cent commission on all moneys received and paid out, and all necessary and reasonable expenditures and charges in and about the execution of the trust, including local agencies. Secondly. During my life the residue of all moneys received shall be paid over to me, or appropriated to my uses under my direction. Thirdly. After my decease, and after the payment of all my just and legal debts, and the expenses of the trust as aforesaid, the residue shall be distributed as directed in a writing supplementary to this deed,

to be executed by me hereafter, or in case that such writing shall not be executed, then the said residue shall be distributed to my heirs according to the laws of the State of New York.

"I authorize and direct the said John Heermans, in his discretion, to compromise any disputed claims, and also to make abatements on debts, when the security is insufficient or doubtful.

"In witness whereof, I, the said Joseph Fellows, have [L. s.] hereunto set my hand and seal on this 10th day of October, 1868.

"JOSEPH FELLOWS."

The court directed a verdict for defendant, which was rendered accordingly ; exceptions were ordered to be heard at first instance at General Term.

*A. Hadden,* for appellant.　The deed of October 10, 1868, created a valid trust in the lands then owned by Mr. Fellows under subdivision 3 of section 55 of the statute of trusts, and for the purpose vested the legal title in the trustee. (1 R. S., 748, § 2 of title 5; 2 R. S. [6th ed.], 1, 130, § 2; *Bridger* v. *Piersoms,* 45 N. Y., 604; *Campbell* v. *Low,* 9 Barb., 585–593; *Tobias* v. *Ketchum,* 32 N. Y., 319, 330 ; *Leggett* v. *Perkins,* 2 Comst., 297–307–314; *Vernon* v. *Vernon,* 53 N. Y., 351–359; *Leggett* v. *Hunter,* 19 id., 445–454; affirmed, 25 Barb., 98; *Van Epps* v. *Van Epps,* 9 Paige, 237; *Wright* v. *Miller,* 4 Seld., 9; *Greenfield's Estate,* 2 Harris [Penn.], 495; Hill on Trustees, 130; *Matter of Livingston,* 34 N. Y., 555; *Fero* v. *Fero,* 9 How. Pr., 85; Tiffany and Bullard's Law of Trusts, 43, 44, 42, 209, 216, 500 ; *Rome Ex. Bank* v. *Eames,* 1 Keyes, 588; *Van Vechten* v. *Van. Veghten,* 8 Paige, 120; *Noyes* v. *Blakeman,* 2 Seld., 567–589; *Savage* v. *Burnham,* 17 N. Y., 561–567–568; *White* v. *Howard,* 52 Barb., 294–300–316; *Clark* v. *Crego,* 47 id., 599–613; *Coster* v. *Lorrillard,* 14 Wend., 265–316–317.)　Suspense of the power of alienation is not essential to the validity of a trust to receive the rents and

profits of land. (*Boynton* v. *Hoyt*, 1 Den., 57, 58; Smith's Commentaries, 821; *Doane* v. *Phillips*, 12 Pick., 223, 226; *Belmont* v. *O'Brien*, 12 N. Y., 394; *Marvin* v. *Smith*, 56 Barb., 600; 46 N. Y., 571–576; *Duval* v. *English*, 53 N. Y., 500; *Vernon* v. *Vernon*, 53 id., 351–359; *Irving* v. *Dekay*, 9 Paige, 521; *Harrison* v. *Harrison*, 36 N. Y., 543; *Dubois* v. *Baker*, 6 N. Y. S. C. [T. & C.], 351; Hill on Trustees, 231–347; *Murthwaite* v. *Jenkinson*, 2 B. & C., 357; 1 Jarm. Pow. Deo., 224, *n.*; *Wykham* v. *Wykham*, 18 Ves., 395–413–414; *Goodtitel* v. *Knott*, Coop., 43; *Hawker* v. *Hawker*, 3 B. & Ald., 537; In re Lang's Trust Law Rep. Eq., 416; *Miller* v. *Miller*, 1 Eng., 672; Law Rep. Eq., 263.) Where real estate is directed to be sold, and the avails directed to be applied to the uses created by the instrument, it is in equity regarded as personal property; the doctrine of uses and trusts and limitations of real estate has no application in such cases. (*Kane* v. *Gott*, 24 Wend., 641; *Gott* v. *Cook*, 7 Paige, 534; *Bramhall* v. *Ferris*, 14 N. Y., 46; *Phelps* v. *Pond*, 23 id., 76; *Austice* v. *Brown*, 6 Paige, 448; *Burrell* v. *Shiel*, 2 Barb., 469, 470; *Forsyth* v. *Rathbone*, 34 id., 405–408; *Horton* v. *McCoy*, 47 N. Y., 21; *Hatch* v. *Bassett*, 52 id., 59; Tiffany & Bullard's Law of Trusts, 495; *Creig.* v. *Leslie*, 3 Wheaton, 563; *Fellows* v. *Heermans*, 4 Lans., 239–240; *Heermans* v. *Robertson*, 64 N. Y., 332–342.)

*George B. Bradley*, for respondent. Plaintiff took no title under the instrument of October 10, 1868, unless it created a trust within section 55 of article 2 of title 2, chapter 1, part 2, Revised Statutes. (*N. Y. Dry Dock Co.* v. *Stillman*, 30 N. Y., 194; *Downing* v. *Marshall*, 23 id., 879; *Yates* v. *Yates*, 9 Barb., 340, 341.) No such trust was created by it. (*Heermans* v. *Robertson*, 64 N. Y., 332.) That instrument created no trust to receive the rents and profits of lands, and apply them to the use of any person during life or for a shorter time within the third subdivision of section 55. (*Heermans* v. *Robertson*, 64 N. Y., 332, 340,

341; affirmed, S. C., 3 Hun, 464; 5 T. & C., 596; *Hotchkiss* v. *Etting*, 36 Barb., 38–44; *Downing* v. *Marshall*, 23 N. Y., 377–380; *Leggett* v. *Perkins*, 2 Comst., 297–306; *De Peyster* v. *Glendining*, 8 Paige, 295–304, 305; *Yates* v. *Yates*, 9 Barb., 324–340; *Sterricker* v. *Dickinson*, 9 id., 516–518; *Moncrief* v. *Ross*, 50 N. Y., 431.) The duty of the plaintiff to sell was imperative. (1 R. S., 734, § 96; *Arnold* v. *Gilbert*, 5 Barb., 190–198; *Selden* v. *Vermelyea*, 1 id., 58–62; *Hotchkiss* v. *Etting*, 36 id., 46; *Moncrief* v. *Ross*, 50 N. Y., 431–436; *Van Boskerck* v. *Herrick*, 65 Barb., 250; *Fellows* v. *Heermans*, 13 Abb. [N. S.], 15; 14 Wend., 324.) The effect of a creation of a trust, to receive rents and profits and apply them within the statute referred to, is to divest entirely the title of the person creating it, and to vest the whole estate in the trustee in law and equity. (1 R. S., 729, § 60; *Marvin* v. *Smith*, 46 N. Y., 576; *Briggs* v. *Davis*, 21 id., 574–576; *Savage* v. *Burnham*, 17 id., 569–570.) The person beneficially interested in a trust for the receipts and application of rents and profits of lands cannot assign or in any manner dispose of his interest. (1 R. S., 730, § 63; *Belmont* v. *O'Brien*, 2 Kern., 401; *Campbell* v. *Foster*, 35 N. Y., 371; *L'Amoureux* v. *Van Rensselaer*, 1 Barb. Chy., 36.) The unqualified direction and imperative duty to sell, and the absolute power of alienation, are not consistent with and will not permit a trust to receive rents and profits and apply them. (1 R. S., 730, § 65; 14 Wend., 320; *Manice* v. *Manice*, 43 N. Y., 303; *Heermans* v. *Robertson*, 64 id., 342; *Boynton* v. *Hoyt*, 1 Den., 57, 58; *Lang* v. *Ropke*, 5 Sandf., 369; *Hawley* v. *James*, 16 Wend., 160; *Vail* v. *Vail*, 7 Barb., 235; *Griffin* v. *Ford*, 1 Bosw., 143; *Leggett* v. *Perkins*, 2 Comst., 321–326.) The nature and practical effect of the relation between the plaintiff and Fellows, produced by the instrument, was one of service. (*Heermans* v. *Ellsworth*, 3 Hun, 473; *Heermans* v. *Robertson*, 3 id., 464.)

RAPALLO, J. When the deed of October 10, 1868, was before this court in the case of *Heermans* v. *Robertson* (64

N. Y., 332), the question whether it created a valid trust of the real estate of the grantor, and vested the legal title thereto in the plaintiff as trustee, was elaborately discussed in the opinions of ALLEN, J., and EARL, J. ALLEN, J., maintaining that the instrument amounted only to a power, and EARL, J., taking the contrary view and holding that it created a valid trust. ANDREWS and MILLER, JJ., concurred with ALLEN, J., and CHURCH, Ch. J., and FOLGER and RAPALLO, JJ., expressed no opinion upon that question, but concurred in an affirmance of the judgment upon a ground which rendered the determination of the effect of the deed upon the legal title unnecessary. That case therefore failed to decide the question, and it remains open as before, with conflicting decisions on the point in the Supreme Court. We have the benefit, however, of the light thrown upon the subject by the exhaustive discussion contained in the opinions of ALLEN and EARL, JJ., before referred to.

Although the question is by no means free from difficulty, I am inclined to adopt the conclusion reached by ALLEN, J., that the legal effect of the deed of October 10, 1868, was not to create any of the express trusts authorized by the Revised Statutes, and that consequently it did not vest the legal title to the land in the so-called trustee. The trust attempted to be created by that instrument was, to sell the granted lands by retail, and convey them to purchasers with covenants of warranty, binding upon the heirs of the grantor, and, until sold, to rent such as could be rented, for the best price that could be got. To collect all debts owing to the grantor and execute deeds for all lands then under contract of sale, on payment of the debts owing upon them respectively, and to dispose of the avails of such real and personal estate as follows : First, to defray the expenses of the trust, including commissions to the trustee. Secondly, during the life of the grantor, to pay over the residue of all moneys received, to him, or to appropriate them to his use under his direction ; and thirdly after his death, and after the payment of his just and legal debts and the expenses of the

trust, to distribute the residue as directed in a supplementary writing to be thereafter executed ; and in case such writing should not be executed, to distribute said residue among the heirs of the grantor.

Under the provisions of the Revised Statutes a trust to sell is valid only where the sale is to be made for the benefit of creditors, or legatees, or for the purpose of satisfying a charge upon the lands. Such does not appear to have been the purpose of the trust now under consideration. Its purpose was to convert the land into personalty and pay the avails to the grantor during his life, and to distribute among appointees to be named in a subsequent writing, such avails as should be realized after his death. It is contended that the grantor having declared in the instrument that the distribution of the residue should be after the payment of all his just and legal debts, the trust was valid as a trust to sell for the benefit of creditors, but such does not appear to have been the purpose of the conveyance. The whole proceeds of the sales made during the life-time of the testator were to be paid over to him, without regard to his creditors, and it might well be that all the lands would be sold during his life. Those sales would certainly not be for the benefit of creditors. As the case is made up for the purposes of this appeal, no mention is made of the death of Mr. Fellows, and we are asked to consider it as if he were alive. No reference is made in the deed to creditors, except in the provision relating to the distribution among appointees, to be made after the decease of the grantor, and such reference is then made, not by way of any specific direction as to the payment of debts, but rather by way of recognition of the rights of creditors to payment, before distribution could be made among heirs or appointees. The clause can reasonably be construed as merely restricting the fund to be distributed, to the residue which should exist after the payment of debts and the expenses of the trust. The creditors of the grantor would be legally entitled, after his death, to payment of his debts out of his estate, before any distribution could be

made. The deed recognizes this right, and makes the distribution subject to it, but it makes no specific provision for the payment of debts. It does not provide that they shall be paid out of the proceeds of the sales of lands ; and in the absence of an express direction to that effect, these proceeds would not be the primary fund for their payment, but the personal estate would be first applicable. Mr. Fellows was, during his life, to receive all the avails of sales of lands and collections of debts due him on contracts and otherwise, and these funds might be ample to provide for the payment of his debts in the regular course of administration. If not, the amounts unpaid from this source would be payable out of the proceeds of personalty received after his death, before the proceeds of the sales of land could be applied ; and it might never become necessary to encroach upon these. The payment of the debts from any source would render the proceeds of the lands distributable. Furthermore, upon no construction of the deed could any trust to sell for the payment of debts arise, until the death of Mr. Fellows ; for during his life the proceeds were to be paid to him, and, from the case as made, it does not appear that he is dead. But the deed in no manner adds to the rights or security of creditors, or benefits them, and it cannot properly be sustained as creating a trust to sell lands for their benefit.

The deed is sought however to be sustained as creating a trust to receive the rents and profits of the lands conveyed, and apply them to the use of the grantor during his life. Conceding that such a trust would be valid, and not impaired by being coupled with a power to sell the same lands and pay over the proceeds to the grantor, still the question remains whether the purpose and effect of the deed were to create such a trust. It is apparent that the main object of the deed was to empower the grantee to sell the lands, and to pay over the proceeds to the grantor during his life, and to pay over to his appointees the proceeds of sales made after his decease. Such a power clearly vests no title in the grantee, but leaves the title in the grantor. In the same

instrument he empowers the grantee to rent such of the lands as can be rented. until sold. There is not even an express authority to collect the rents, though this may be implied, and may be embraced in the power to collect all debts owing to the grantor. No specific direction is given as to the application of the rents which may be collected, but if any should be collected by the grantee, they would go into the general fund arising from sales of the real estate and collection of debts, which fund was by the terms of the deed payable to the grantor, and in this manner only would the rents be payable to or applicable to the use of the grantor. But there was no certainty that any of the land would be rented, as the direction was to sell, and it appears on the face of the deed that it was not contemplated that all the land should be rented, but only such parts as were capable of being rented until sold, and if there had been a valid trust to receive and apply the rents of those portions, it could hardly be regarded as vesting in the trustee the legal title to other portions of the lands, the renting of which was not contemplated. If the estate consisted principally of wild lands, and contained only a few parcels capable of being rented, it would hardly be contended that the power to rent these until sold, created a valid trust as to all the lands of the grantor. Considering the peculiar character of this deed I do not think it can be sustained as creating a trust to receive the rents and profits of the lands purported to be granted, and to apply them to the use of the grantor, but that the direction to rent parts of the land until sold, was merely incidental to the main purpose of effecting a sale of the whole, and would not preclude the grantor from himself collecting the rents, if any, and that it is insufficient to constitute a valid trust requiring that the legal title to all the lands be vested in the trustee.

Whether the deed created a mere agency for the management of the grantor's estate for his own benefit, or a power in trust valid under the Revised Statutes and therefore irrevocable, it is not now essential to consider. The only point now before us is whether during the life-time of Mr. Fellows

it operated to vest the legal title in the plaintiff so as to enable him to maintain ejectment, and I am of opinion that it did not.

The authorities bearing upon the subject are so fully cited and commented upon in the opinions in *Heermans* v. *Robertson* (64 N. Y., 332), that I do not deem it necessary to refer to them again here, and the views now expressed are substantially those set forth in the opinion of ALLEN, J., in that case.

It must be understood that the question whether the deed of June 29, 1871, which changes the directions as to the application of the proceeds of the property conveyed by the deed of October 10, 1868, operates to convert the provisions of that deed into a trust to sell for the benefit of creditors, is not now passed upon. Although the deed of 1871 was put in evidence upon the trial, it appears to be assumed in the briefs of counsel on both sides that it does not affect the issues in this action. For that reason its effect has not been considered, and all questions in relation to it are left open.

The judgment should be affirmed.

All concur, except EARL, J., not voting.

Judgment affirmed.